# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Sierra Club Northstar Chapter,
Friends of the Boundary Waters
Wilderness, Defenders of Wildlife,
The Wilderness Society, and
Northeastern Minnesotans for
Wilderness,

        Plaintiffs,

  v.

Abigail R. Kimbell, as Chief of the
U.S. Forest Service, and Ed Schafer,
as Secretary of Agriculture,

        Defendants,

and

Minnesota Forest Industries, Inc.,
Minnesota Timber Producers
Association, St. Louis County,
and Lake County,

        Intervenors,

and

Mark Holsten, as Commissioner
of the Minnesota Department of
Natural Resources,

        Amicus Curiae.

**MEMORANDUM OPINION
AND ORDER**
Case No. 07-3160 ADM/RLE

---

Brian B. O'Neill, Esq., Richard A. Duncan, Esq., and Peter Hennigan, Esq., Faegre & Benson LLP, Minneapolis, MN, on behalf of Plaintiffs.

David W. Fuller, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of the federal Defendants.

---

## I.  INTRODUCTION

This matter is before the Court for consideration of Plaintiffs' Sierra Club Northstar Chapter ("Sierra Club"), Friends of the Boundary Waters Wilderness ("Friends"), Defenders of Wildlife, The Wilderness Society, and Northeastern Minnesotans for Wilderness (collectively "Plaintiffs") Motion for Fees and Other Expenses [Docket No. 112].  In their Motion, Plaintiffs seek $230,351.18 from the federal Defendants (the "Forest Service") for attorney's fees and other expenses incurred as a result of challenging the Forest Service's decision to conduct timber sales and road building in the Echo Trail Area Forest Management Project ("Echo Trail Project" or "Project") in the Superior National Forest.  For the reasons set forth below, Plaintiffs' Motion is denied.

## II.  BACKGROUND

The factual and procedural background is set forth in the Court's September 15, 2008 Order [Docket No. 110] and is incorporated herein.  In that Order, the Court granted Plaintiffs summary judgment on Count One of the Amended Complaint [Docket No. 48], which alleged violations of the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370f ("NEPA").  September 15, 2008 Order at 7, 14.  The Court concluded that the Forest Service violated NEPA by failing to take a "hard look" at the impacts of the Echo Trail Project on water quality and watershed health in the Boundary Waters Canoe Area Wilderness ("Boundary Waters") in its Final Environmental Impact Statement ("FEIS").  Id. at 10-11, 14.  The Court granted the Forest

Service summary judgment on Counts Three and Five.[1]  Id. at 16-20.  Plaintiffs' Motion for Fees and Other Expenses followed.

### III.  DISCUSSION

Plaintiffs seek attorney's fees and other expenses under the authority of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Under the EAJA, "a prevailing party is entitled to an award of fees and expenses in any action brought by or against the United States 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'"  U.S. S.E.C. v. Zahareas, 374 F.3d 624, 626 (8th Cir. 2004) (quoting 28 U.S.C. § 2412(d)(1)(A)).  The Forest Service does not dispute that Plaintiffs are "prevailing parties" within the meaning of the EAJA.  See Federal Defs.' Resp. to Pls.' Motion for Fees [Docket No. 117] at 9.  However, the Forest Service argues that attorney's fees and expenses should not be awarded because its position was substantially justified.

#### A.    The Substantially Justified Standard

The test of substantial justification is essentially one of reasonableness.  See Pierce v. Underwood, 487 U.S. 552, 563-64 (1988).  A position is substantially justified if it has "a 'reasonable basis both in law and fact,'" or if it is "'justified in substance or in the main.'"  Zahareas, 374 F.3d at 626 (quoting Pierce, 487 U.S. at 565).  Even if the government's position ultimately turns out to be incorrect, it can be substantially justified "as long as 'a reasonable person could think it correct.'"  Id. (quoting Pierce, 487 U.S. at 566 n.2).  "The most powerful indicator of reasonableness of an ultimately rejected position is a decision on the merits and the

---

[1] Count Two was dismissed without prejudice.  September 15, 2008 Order at 16. Plaintiffs voluntarily dismissed Count Four with prejudice.  Id. at 5.

rationale which supports that decision." Friends of the Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 885 (8th Cir. 1995). The burden is on the Forest Service to prove that its position was substantially justified. See id.

As an initial matter, Plaintiffs contend that Eighth Circuit precedent requires that the Forest Service show that its position was "clearly reasonable," a formulation of the substantially justified standard that derives from United States v. 1,378.65 Acres of Land, 794 F.2d 1313, 1318 (8th Cir. 1986). Plaintiffs maintain that this formulation imposes a "more stringent standard" for the test of substantial justification than that described by the Supreme Court in Pierce. Pls.' Reply Mem. in Supp. of Mot. for Fees [Docket No. 121] at 2. In support, Plaintiffs rely on a comment in Harmon v. United States ex rel. FMHA that the "clearly reasonable" standard "appears to be a more difficult standard for the government to meet than the Supreme Court's 1988 formulation in [Pierce]." 101 F.3d 574, 587 n.10 (8th Cir. 1996).

Although the Harmon court decided to apply the clearly reasonable formulation because it "seem[ed] to be more favorable to [the plaintiff]," the court did not conclude that it is a more stringent standard than the Supreme Court's formulation in Pierce. Id. Had the Harmon court reached such a conclusion, as Plaintiffs maintain it did, the court would have been bound to abandon the apparently more stringent formulation of "clearly reasonable" in favor of the Supreme Court's more recent and apparently less stringent formulation in Pierce. See Northwest Airlines, Inc. v. Air Line Pilots Ass'n Int'l, 373 F.2d 136, 140 (8th Cir. 1967) ("When the Supreme Court has spoken clearly upon the most recent occasion on which the pertinent issue has been considered, lower courts are bound to follow the pronouncements of law made."); see also Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994) ("It is [the Supreme] Court's

responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law.").[2] Contrary to Plaintiffs assertions, the case law supports the view that the "clearly reasonable" standard, as it has been applied in the Eighth Circuit, is no different than the Supreme Court's explanation of the substantially justified standard in Pierce. See Friends, 53 F.3d at 885 (referring to both the clearly reasonable articulation and the Pierce articulation in explaining the substantially justified standard); S.E.C. v. Comserv Corp, 908 F.2d 1407, 1411-12 (8th Cir. 1990) (same); Sullivan v. Sullivan, 738 F. Supp. 332, 333 (W.D. Miss. 1990) ("A party's position is substantially justified if it is justified to a degree that could satisfy a reasonable person," or "[i]n other words, the government must show that its position was clearly reasonable . . . .") (quotations omitted).

The parties next dispute the proper scope of the Court's inquiry under the substantially justified standard. Plaintiffs argue that the inquiry is limited to only the Forest Service's position with respect to the issue on which Plaintiffs prevailed—the claim that the Forest Service violated NEPA by failing to take a "hard look" in the FEIS at the impacts of the Echo Trail Project on

---

[2] In interpreting "substantially justified" as requiring a showing that the government's position was clearly reasonable, the Eighth Circuit in 1,378.65 Acres relied on a 1985 report of the House Judiciary Committee that stated that "'the test must be more than mere reasonableness.'" 794 F.2d at 1317 (quoting H.R. Rep. No. 120, at 9). The court concluded that this language showed that "Congress did not intend a reasonableness standard for substantial justification of government action to be weak or relaxed," and, accordingly, "the Government must now show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." Id. at 1318. In Pierce, however, the Supreme Court rejected the view that the House report should control the construction of the statute and demanded a construction of "substantially justified" that required the government to show something more than reasonableness. 487 U.S. at 566-67. In short, even if Plaintiffs are correct that the Eighth Circuit originally adopted the phrase "clearly reasonable" to increase the stringency of the substantially justified standard, the basis for imposing such an increase in stringency (the 1985 House report) has since been unequivocally rejected by the Supreme Court.

water quality and watershed health in the Boundary Waters.  The Forest Service disagrees and argues that the proper inquiry evaluates whether it was substantially justified with respect to its position on the litigation as a whole, not with respect to its position on one particular issue.

Some courts have adopted the view that "when determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of the circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation."  Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 138 (4th Cir. 1993); see also Jackson v. Chater, 94 F.3d 274, 279-80 (7th Cir. 1996) ("[B]eing incorrect on one point does not translate into lacking substantial justification for one's litigation position during the entirety of a civil action."); Corona v. Barnhart, 431 F. Supp. 2d 506, 513-14 (E.D. Pa. 2006) (adopting "a version of the Fourth Circuit's approach" in Roanoke and considering the government's position "on all of the arguments").  Other courts have taken the contrary view.  For example, the District of Columbia Circuit, in rejecting an approach similar to the Fourth Circuit's approach in Roanoke, held:

> [I]t cannot be the case that Congress intended that a party who prevails on an essential ground of a petition to set aside government action cannot recover the congressionally contemplated fees because the government's action was substantially unjustified on only one of several possible bases.  Virtually any government action is either grouped with other actions or is a component of some greater action.  Presumably the government is usually substantially justified on most of its actions.  If a litigant who has successfully challenged a government action as substantially unjustified and achieved a complete victory in terms of the relief prayed cannot recover EAJA fees because of this well-nigh universal grouping, then Congress's enactment of the EAJA becomes a virtual nullity.

Air Transp. Ass'n of Canada v. Fed. Aviation Admin., 156 F.3d 1329, 1332 (D.C. Cir. 1998); see also Goldhaber v. Foley, 698 F.2d 193, 197 (3d Cir. 1983) (holding that it would be

"incongruous to deny fees to a prevailing party who identifies and defeats one unreasonable government position simply because the government has substantial justification for defending a second claim in the same action").³

Plaintiffs argue that the Eighth Circuit has rejected an approach that considers the question of substantial justification in view of the totality of the circumstances in favor of an approach that considers only the issue on which the plaintiffs prevailed. In support of their argument, they point to language in Zahareas stating that "'[t]he most powerful indicator of an *ultimately rejected position* is a decision on the merits . . . .'" 374 F.3d at 627 (quoting Friends, 53 F.2d at 885) (emphasis added). The Court does read this language as demonstrating that the Eighth Circuit has decidedly rejected a holistic approach to the question of substantial justification. In fact, other language in Zahareas suggests that the Eighth Circuit most certainly does consider the question of substantial justification in view of the totality of the circumstances:

> [W]e must fully analyze the facts and law under the applicable standards. In addition, we have the benefit of looking at the case *in its entirety*, reviewing *all the issues presented* and the [government's] actions both prior to and during litigation. From this vantage point, we find that the [government's] case was not substantially justified.

Id. at 628 (emphasis added).

---

³ In Commissioner, INS v. Jean, the Supreme Court commented that "[w]hile the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." 496 U.S. 154, 161-62 (1990). In light of this language, one court has questioned the continuing validity of Goldhaber. See Utu Utu Gwaitu Paiute Tribe v. Dep't of the Interior, 773 F. Supp. 1383, 1387 (E.D. Cal. 1991) (stating that the Supreme Court's decision in Jean "breath[ed] new vitality into the dissent in Goldhaber which suggested that the [EAJA] contemplates a view of the entire proceedings rather than an issue-by-issue analysis") (quotation omitted).

Ultimately, whether the substantially justified inquiry should be conducted on an issue-by-issue basis or by taking a more holistic view of the government's position in bringing about or continuing the litigation is, at least in this circuit, open to debate. Perhaps a better way of conducting the analysis would be to adopt an approach somewhere between Plaintiffs' and the Forest Service's urged approaches. See Roanoke, 991 F.2d at 139 (suggesting that the inquiry includes a sliding scale in which an unreasonable position on a single but important issue could "taint the government's 'position' in the entire case as unreasonable, whereas a totally insupportable and clearly unreasonable position by the government on an inconsequential aspect of the litigation might not"). But the Court need not decide which approach to adopt because even under the approach urged by Plaintiffs', which focuses only on the one count on which Plaintiffs prevailed in a five-count complaint, the Forest Service's position on that issue was substantially justified.

### B. Application of the Standard

The FEIS concluded that although the project created the risk of some minimal direct and indirect negative effects on water quality and watershed health occurring within the Project area, there was no risk of any cumulative impacts on water quality or watershed health occurring within the Project area. In claiming a violation of NEPA, Plaintiffs contended that the FEIS failed to consider whether the risk of minimal negative effects on water quality and watershed health within the Project area might also pose a risk of negative effects on water quality and watershed health within the Boundary Waters. The Forest Service's position was that because the FEIS concluded that the minimal negative effects would not result in any cumulative impacts on water quality or watershed health within the Project area, the natural inference is that there

would be no cumulative impacts on water quality or watershed health within the Boundary Waters. Therefore, the Forest Service reasoned, the FEIS was not deficient in failing to expressly address the effects of the Project on water quality and watershed health within the Boundary Waters.

The Court ultimately rejected the Forest Service's argument, concluding that the FEIS failed to adequately explain why the negative effects on water quality and watershed health within the Project area would not be felt within the Boundary Waters and would not result in cumulative impacts there. The Court noted that "[a]n objective of an EIS is to inform and assure the public that the environmental impacts of a proposed action have been fully considered." September 15 Order at 9. In light of that objective, the Court found that the FEIS should expressly explain why potential negative effects within the Project area will not be felt in the Boundary Waters and will not result in cumulative impacts. Significantly, the inference advanced by the Forest Service that since no cumulative impacts would be felt within the Project area, none would be felt within the Boundary Waters was not rejected as unreasonable. In fact, the Court tended to agree with the inference, commenting that because the FEIS was "comprehensive and thoughtful and presents a great deal of information," it was "quite likely that the Forest Service already has the information necessary to address the Project's impacts on the Boundary Waters" and the Forest Service might well be able to revise the FEIS to include the required discussion of that information. Id. at 21.

As was noted in the summary judgment order, the problem in this case was not that the Forest Service "entirely ignored and failed to consider" the impacts of Project on the Boundary Waters, clearly it did. Id. at 9. Rather the problem was that the FEIS was selective in its

9

discussion. Thus, the Forest Service did not adequately explain all of the considerations that were looked at in evaluating the Project, and, as a result, the Forest Service's approval of the Project was arbitrary and capricious.[4] But in the Court's view, the Forest Service's position was "justified in substance or in the main" and "a reasonable person could think it correct." Pierce, 487 U.S. at 565, 566 n.2.

The parties have also raised arguments regarding whether Plaintiffs are even eligible to receive an award of fees under the EAJA and, if so, what the correct measure of fees should. Given the Court's decision that Plaintiffs are not entitled to an award of fees under the EAJA because the Forest Service's position was substantially justified, these additional issues are moot.

---

[4] Courts have rejected the view that a previous determination that government action was arbitrary and capricious means, ipso facto, that the government's position was not substantially justified. See, Nail v. Martinez, 391 F.3d 678, 685 (5th Cir. 2004); Mid-Del Therapeutic Ctr., Inc. v. Comm'r of Internal Revenue, 30 F. App'x 889, 893 n.3 (10th Cir. 2002); Abernathy v. Clarke, 857 F.2d 237, 239 (4th Cir. 1988); Andrew v. Bowen, 837 F.2d 875, 878 (9th Cir. 1988); Fed. Election Comm'n v. Rose, 806 F.2d 1081, 1089 (D.C. Cir. 1986). Indeed, "[s]ome types of arbitrary and capricious behavior, such as an agency's failure to provide an adequate explanation for its actions or its failure to consider some relevant factor in reaching its decision, may not warrant a finding that an agency's action lacked substantial justification." Wilkett v. Interstate Commerce Comm'n, 844 F.2d 867, 871 (D.C. Cir. 1988).

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Fees and Other Expenses [Docket No. 112] is **DENIED**.

BY THE COURT:

     s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 19, 2009.